## STATE vs. BESSIE I. McKINNEY.

1. HOMICIDE—"MANSLAUGHTER"—"MURDER"—DISTINGUISHMENT.

Manslaughter is distinguished from murder in either degree, in that in manslaughter there is no malice, while to constitute "murder" the killing must proceed from a wicked, malignant, and depraved spirit, characterized by malice, and "manslaughter" generally results from unpremeditated and unreflecting passion.

2. HOMICIDE—SELF-DEFENSE—BURDEN OF PROOF.

The burden of establishing self-defense is on accused.

3. HOMICIDE—SELF-DEFENSE—RESISTANCE OF ASSAULT.

In repelling or resisting an assault, no more force may be used than is necessary for the purpose, the person attacked being bound to retreat if he can safely do so, or to use such other means as are in his power to avoid killing his assailant, though the attack is of such a character as to create in the mind of the person attacked a reasonable belief that he is in danger of death or great bodily harm.

4. HOMICIDE—ASSAULT—SELF-DEFENSE.

A person is entitled to protect himself from assault and injury by opposing force to force, and is not obliged to wait until he is struck by an impending blow, so that if a weapon is raised in order to shoot or strike, or the danger of other personal violence is imminent the person in such danger may protect himself by striking the first blow to repel and prevent the attempted injury.

5. HOMICIDE—SELF-DEFENSE—SUDDEN AFFRAY.

Where one was assaulted on a sudden affray, and in the judgment of the jury honestly believed on reasonable and sufficient grounds that he was in imminent danger of being killed or of receiving great bodily harm, he would be entitled to use a deadly weapon on his assailant in self-defense, but in exercising such right he must appear to have been closely pressed, and must have retreated as far as he safely could in good faith, with an honest intent to avoid the violence and peril of the assault.

6. CRIMINAL LAW—REASONABLE DOUBT.

While accused is presumed to be innocent until his guilt is proven to the satisfaction of the jury beyond a reasonable doubt, such doubt must not be a vague, speculative, or mere possible one, but a reasonable, substantial doubt, which remains in the minds of the jury after a careful consideration of all the evidence.

(*May* 14, 1914.)

PENNEWILL, C. J., and WOOLLEY and RICE, J. J., sitting.

*Josiah O. Wolcott*, Attorney General, for the state.

*J. Frank Ball* for the prisoner.

Court of Oyer and Terminer for New Castle County.

Bessie I. McKinney was indicted and tried for manslaughter. Verdict of guilty.

                              Charge.

The questions of fact and of law appear in the charge to the jury.

PENNEWILL, C. J., charging the jury:

Gentlemen of the jury:—The prisoner, Bessie I. McKinney, is on trial for manslaughter.

It is charged by the state that on the twenty-fifth day of January of the present year, in the Village of Glasgow, in Pencader Hundred, New Castle County, the prisoner did feloniously and willfully make an assault upon one Delaware Reed by shooting him with a pistol in the upper left breast, thereby causing his death.

The prisoner does not deny that she shot and killed Delaware Reed, but claims that the shooting was in the necessary and lawful defense of her person; that she had to do it to save her own life, or at least to protect herself from great bodily harm.

[1] The indictment does not charge the prisoner with murder either of the first or second degree, and it is not necessary, therefore, for the court to instruct you with respect to such crimes. In order, however, that you may better and more clearly understand what manslaughter is, we may say that the essential and distinguishing ingredient of murder of either degree is malice, while in manslaughter there is no malice.

You doubtless understand in a general way what malice means, and what is implied when a person is said to be malicious. It is difficult to define the term in words, but it may be manifested in many ways. It is a state or condition of the mind or heart, and is most commonly shown by acts of revenge or cruelty.

Manslaughter is the unlawful killing of a person without any malice whatever, and that is the offense for which the defendant is indicted. While murder proceeds from a wicked, malignant and depraved spirit and is characterized by malice, manslaughter results from no malignity, but from unpremeditated and unreflecting passion.

The most common example of manslaughter is where two persons fight upon a sudden affray, and one kills the other with a deadly weapon in the heat of blood or in a transport of passion

without time for reflection or for the passions to cool. In such case the law, taking account of the infirmity of human nature, treats the offense as of less grade than either degree of murder; but it in no sense excuses the offender.

As we have already said, the prisoner admits that she shot the deceased, but claims that her act was not unlawful, but committed in the necessary defense of her person. This is her plea, her defense, and if it is proven to your satisfaction she is entitled to a verdict of acquittal.

[2, 3[ But the burden of establishing self-defense rests upon the defendant. In repelling or resisting an assault no more force may be used than is necessary for the purpose. If a person is attacked by another, even though the attack be of such a character as to create in the mind of the person attacked a reasonable belief that he is in danger of death or great bodily harm, it is his duty to retreat if he can safely do so, or to use such other means as are within his power to avoid killing his assailant. .

[4, 5] But the law accords to every one the right to protect his person from assault and injury by opposing force to force, and he is not obliged to wait until he is struck by an impending blow; for if a weapon be raised in order to shoot or strike, or the danger of other personal violence be imminent the party in such danger may protect himself by striking the first blow for the purpose of repelling and preventing the attempted injury. Where one is assaulted upon a sudden affray, and in the judgment of the jury honestly believed on reasonable and sufficient grounds, that he was in imminent danger of being killed, or of receiving great bodily harm, he would have, in self-defense, the right to use a deadly weapon against his assailant. But in exercising such right of self-defense, in a manner likely to cause death or great bodily harm to his assailant, he must be closely pressed by him, and must have retreated as far as he safely could, in good faith, with the honest intent to avoid the violence and peril of the assault. If in the present case the violence and peril were so sudden, fierce or urgent as not to allow the defendant to safely retreat, or have other probable means of escape, then she had a right to stand and use a deadly weapon in her defense.

[6] In every criminal case the accused is presumed to be innocent until his guilt is proved to the satisfaction of the jury beyond a reasonable doubt. If, after carefully and conscientiously considering all the evidence in the case you should entertain a reasonable doubt of the guilt of the prisoner, that doubt must inure to her benefit, and your verdict should be not guilty. But such doubt must not be a vague, speculative or mere possible doubt, but a reasonable, substantial doubt which remains in your minds after a careful consideration of all the evidence; and such a doubt as reasonable, fair-minded and conscientious men would feel constrained to entertain under all the facts and circumstances of the case.

Verdict, guilty with a recommendation to the mercy of the court.

### REMARKS OF THE COURT IN IMPOSING SENTENCE.

PENNEWILL, C. J.:—This has been to the court a very distressing case. We strongly sympathize with the defendant in her trouble, and have nothing but pity for her children. In this as in many other cases the weak and innocent must suffer for the acts of the guilty. It is not an exceptional or uncommon case in that regard.

Undoubtedly the prisoner had great provocation for her act, and we would not have been surprised if the verdict had been different from what it was. Certainly it would have been easy, in the exercise of mercy, to let the prisoner go free. But such action, would perhaps have been based more upon sympathy than strictly upon the evidence.

The prisoner has had a fair trial and an able defense. No counsel could possibly have done more for his client, Mrs. McKinney, than your counsel has done for you. He has been zealous, alert and persistent from the beginning to the end. In no respect has he failed to do his full duty at every stage of the case.

But notwithstanding all his efforts, and a great deal of general sympathy for you, the jury found you guilty of manslaughter. The meaning of that verdict is, that no matter how

Sentence.

great your provocation was it was not sufficient to justify or excuse the taking of a human life. It means that the fatal act was not committed in self defense but against the law. This verdict we have no right to disregard no matter what our personal feelings may be. And we are not prepared to say the verdict was an improper one under the evidence and the law.

The jury which decided your case was composed of unusually good men, and presumably they felt as much sympathy for you as others felt. But in the faithful discharge of their duties, painful as it must have been, they found you guilty.

When such a jury is able to overcome their feeling of compassion in a case like this, and render a verdict which they conscientiously believe is warranted by the evidence, the feeling is strong with the court that the jury should be commended and their verdict properly sustained.

We are now asked to probate the prisoner, which means that she shall not be punished at all. This application has been strongly and feelingly pressed upon the court, and even the jury that tried the case have, with one exception, joined in this request. We wish to say in this connection that when a jury have rendered their verdict in a criminal case their duty ends, and the law determines, within certain limitations, what the punishment shall be. We question that the jury in any case, after the verdict is rendered, should be requested to nullify their action by asking the court to discharge the prisoner on sympathetic grounds. Such a request is very difficult for the jury to refuse, because it is nothing else than an appeal for mercy after their sworn duty has been discharged. And, moreover, it makes the duty of the court in imposing the sentence much more embarrassing and difficult to perform. When a jury have performed a disagreeable duty from no choice of their own but under the compulsion of the state, it seems to the court they should be free from any further appeal.

This court has been very liberal, and properly so, in the probation of prisoners; but never yet has this power been exercised in a homicide case, and we are inclined to think it should not be. At any rate we are clearly of the opinion it should not be

Sentence.

in the present case. It is quite possible that the effect might be very bad if those criminally inclined should know that a person convicted for taking a human life might practically go free and suffer no imprisonment or hardship at all. We have no disposition to do anything to make the commission of crime easier or more common than it already is.

While we cannot parol the prisoner we are inclined to be as merciful as possible because of certain facts that impressed us very much in her favor at the trial. We might imprison her for ten years, but will impose the lightest sentence we can under the law.